IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| WILLIAM FRANKS and | : | CIVIL ACTION |
| ALL THE WHEY, INC. | : | |
| | : | NO. 09-3649 |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| FOOD INGREDIENTS | : | |
| INTERNATIONAL, INC., et al. | : | |
| | : | |
| Defendants. | : | |

**Jones, II, J.**                                                                 **July 30, 2010**

## MEMORANDUM

This matter arises out of Plaintiff William Franks' ("Franks") business dealings with his co-Plaintiff, All the Whey, Inc. ("ATW") and Defendants Edward Tulskie ("Tulskie"), Ciaran Quigley ("Quigley"), and Food Ingredients International, Inc. ("FII") (collectively, "Defendants"), which resulted in Defendants Tulskie and Quigley's alleged mail and/or wire fraud in a scheme to extract money from Franks using FII. Plaintiffs bring a federal claim for violation of the civil Racketeering Influenced Corrupt Organization Act ("RICO"), as well as state law claims for breach of stock purchase agreement, breach of contract involving lines of credit agreement, and fraud. Having carefully considered counsel's arguments, the Court will grant Defendants Tulskie and FII's pending Motion to Dismiss for the reasons set forth below.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs filed their original Complaint on August 10, 2009 (Dkt. No. 2), alleging that Tulskie and Quigley, who claimed to be part owners of both ATW and FII along with Franks,

convinced Franks to lend funds to ATW, which Tulskie and Quigley then used improperly "for business and non-business use associated with Food Ingredients and for their own personal use." Compl. ¶¶ 9-11.  Specifically, Plaintiffs alleged that Defendants "acted in concert forming an enterprise" and "interacted with each other via cell phone, e-mail correspondence and other use of the mails and telephone system" to commit "mail and/or wire fraud in connection with their endeavor to secure investments, loans and other financial resources from Franks and affected interstate commerce in doing so."  Compl. ¶ 38.  Plaintiffs brought a federal claim for mail and/or wire fraud in violation of the civil Racketeering Influenced Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961 *et seq.* (Count One, against all Defendants), as well as state law claims for breach of stock purchase agreement (Count Two, against all Defendants), breach of contract involving a line of credit agreement (Count Three, against Tulskie and Quigley), breach of contract involving a revolving line of credit agreement (Count Four, against all Defendants), and fraud (Count Five, against all Defendants).[1]

 After having been granted an extension of time in which to respond to Plaintiffs' Complaint (Dkt. No. 6), Tulskie filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on December 23, 2009, arguing that Plaintiffs had failed to adequately plead an enterprise, requisite predicate acts, or pattern of racketeering activity under RICO, or to adequately plead their fraud claim (Dkt. No. 10 ("Tulskie 1st Motion to Dismiss")).  FII filed its

---

[1]On August 10, 2009, simultaneous to the filing of their Complaint, Plaintiffs moved for a temporary restraining order, preliminary injunction, and recusal of counsel (Dkt. No. 1), seeking to enjoin a state court hearing set to commence on August 12, 2009.  On August 11, 2009, after an *ex parte* hearing, the Honorable Paul S. Diamond, acting in his capacity as emergency judge at that time, denied Plaintiffs' motion without prejudice to Plaintiffs' right to renew before this Court (Dkt. No. 3).

own Motion to Dismiss on December 29, 2009, joining in Tulskie's arguments and adding that

Plaintiff failed to adequately plead FII as a RICO person in Count One, that FII is not a party to

the stock purchase agreement at issue in Count Two, and that Plaintiff failed to allege FII's

liability for any breach of the revolving line of credit agreement at issue in Count Three (Dkt. No.

14 ("FII 1st Motion to Dismiss")).[2]

In response, on January 12, 2010, Plaintiffs filed their Amended Complaint (Dkt. No. 17),

bringing the same claims against the same parties as set forth above, with the exception that

Plaintiff filed its RICO claim for mail and/or wire fraud (Count One) against Tulskie and Quigley

only, not FII. *See* Am. Compl. ¶¶ 42-49.  In their Amended Complaint, Plaintiffs allege that

"Defendants Tulskie and Quigley participated in and conducted the affairs of Food Ingredients,

the enterprise, in order to extract money from Franks via their fraudulent activities."  Am.

Compl. ¶ 43.

Tulskie and FII then filed a joint Motion to Dismiss Plaintiffs' Amended Complaint on

January 22, 2010 (Dkt. No. 18 ("Second Motion to Dismiss" or "Defs. Mem.")), essentially

pressing the same arguments as in their previous individual Motions to Dismiss: (1) Plaintiffs fail

to adequately plead an association-in-fact enterprise, the requisite predicate acts or a pattern of

racketeering activity under RICO; and (2) Plaintiffs fail to adequately plead their fraud claim.

Plaintiffs responded on February 8, 2010 (Dkt. No. 20 ("Pl. Opp.")), arguing the sufficiency of

their Complaint but also requesting leave to amend if the Court determines that the Amended

---

[2]FII also contended in its First Motion to Dismiss that ATW is not a proper plaintiff in this action.  *See* FII 1st Motion to Dismiss at 1 n.1.  For the reasons set forth below, this question is moot and the Court need not reach it at this time.

Complaint falls short of the appropriate pleading standard.[3]  Tulskie and FII sought and received permission to file a reply brief in support of their Second Motion to Dismiss, which was docketed on February 16, 2010 (Dkt. No. 23 ("Defs. Reply")).[4]  Plaintiffs sought and received permission to file a sur-reply brief in opposition, which was docketed on March 1, 2010 (Dkt. No. 26 ("Pls. Reply")).

## II.   LEGAL STANDARD

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal quotation and citation omitted).  After the Supreme Court's decision in *Bell Atl. Corp. v. Twombly*, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, — U.S. —, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. 544, 555 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).  This standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant

---

[3]Plaintiffs did not, however, attach a proposed Second Amended Complaint to their opposition to Defendants' Second Motion to Dismiss.

[4]In the interim, on February 2, 2010, the Court ordered Plaintiffs to show cause within 30 days as to why the matter should not be dismissed for want of prosecution as to Defendant Quigley (Dkt. No. 19).  Plaintiffs never responded to the Court's Order, and as such, dismissal of Defendant Quigley is appropriate for Plaintiff's failure to prosecute in addition to the reasons set forth in the remainder of Court's memorandum herein.

has acted unlawfully." *Id. See also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir.

2009) ("All civil complaints must contain more than an unadorned,

the-defendant-unlawfully-harmed-me accusation.") (internal quotation omitted).

## III.  DISCUSSION

### A.  Sufficiency of Plaintiffs' RICO Claim

In order to state a valid civil RICO violation, a complaint must allege that a "person"

acquires or maintains an interest in or control of an "enterprise" through a "pattern of

racketeering activity" which result in injury to the plaintiff's business or property.  *Seville Indus.*

*Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 788 (3d Cir. 1984) (citing 18 U.S.C. §

1962(b)).  Tulskie and FII argue that Plaintiffs fail to adequately plead a RICO enterprise, the

requisite predicate acts, or a pattern of racketeering activity, and thus their RICO allegations are

not entitled to the assumption of truth at this stage of the proceedings.  *See* Defs. Mem. at 13

(citing *Iqbal*, 129 S. Ct. at 1950).  While the Court finds that Plaintiffs have satisfied the pleading

requirements with regard to a RICO "enterprise," they have failed to do so in connection with the

requisite "predicate acts" or "pattern of racketeering activity" underlying their RICO claim.

### 1.  Existence of RICO Enterprise

To meet the RICO pleading requirements, a plaintiff must identify a culpable party that is

distinct from the alleged RICO "enterprise."  *See Seville*, 742 F.2d at 789.  A "person" is defined

by the statute to include "any individual or entity capable of holding a legal or beneficial interest

in property."  18 U.S.C. § 1961(3).  The term "enterprise" includes "any individual, corporation,

association, or other legal entity, and any union or group of individuals associated in fact

although not a legal entity."  18 U.S.C.§ 1961(4).  A defendant corporation identified as a

"person" cannot also be the "enterprise." *Stewart v. Assocs. Consumer Discount Co.*, 1 F. Supp. 2d 469, 474 (E.D. Pa. 1998) (citing *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.*, 46 F.3d 258, 268 (3d Cir. 1995) (a claim against one corporation as both "person" and "enterprise" is insufficient; "a viable § 1962(c) action requires a claim against defendant 'persons' acting through a distinct 'enterprise'")).

In their First Motions to Dismiss, Tulskie and FII argued that by alleging only that "Defendants acted in concert forming an enterprise," Plaintiffs failed to satisfy this distinctiveness requirement. *See* Tulskie 1st Motion to Dismiss at 12-13 (citing Compl. ¶ 38); FII 1st Motion to Dismiss at 2.  Upon Plaintiffs having amended their Complaint, however, Tulskie and FII still contend that Plaintiffs fail to adequately plead the existence of an enterprise because they fail to adequately plead an "association-in-fact" enterprise, which is a "group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981).  However, as Plaintiffs point out, Tulskie and FII mistakenly assume that Plaintiffs rely on an "association-in-fact" as the "enterprise" in question. *See* Pls. Opp. at 10.  As discussed above, under RICO an "enterprise" may be a legal entity, such as a corporation, acting alone *or* (2) a group "associated in fact," though not a legal entity. *See* 18 U.S.C. § 1961(4); *United States v. Turkette*, 452 U.S. 576, 581-82 (1981).  Here Plaintiffs allege that the "persons" at issue are Tulskie and Quigley, and that the "enterprise" is FII, a corporation organized and existing under the laws of the State of Delaware. *See* Am. Compl. ¶¶ 3, 43; Pls. Opp. at 11.  As Plaintiffs do not allege an association-in-fact enterprise, they are not required to provide further details other than to identify the corporate enterprise here. *See Seville*, 742 F.2d at 790 (where an association-in-fact is not alleged, only the enterprise's identification must be

6

pleaded in order to state a cause of action);[5] *cf. Chassen v. Fid. Nat. Fin., Inc.*, No. 09-291, 2009 WL 4508581, at *10 (D.N.J. Nov. 16, 2009) (dismissing complaint where plaintiff did not actually identify alleged enterprise).  Plaintiffs have sufficiently identified the existence of FII as the RICO enterprise such as to satisfy the pleading standard.[6]

## 2.     Predicate Acts

In order to satisfy the "racketeering activity" prong of their RICO claim, Plaintiffs allege mail and/or wire fraud in their original and Amended Complaints, both of which are enumerated predicate acts under 18 U.S.C. § 1961.  *See* Compl. ¶ 38; Am. Compl. ¶ 45.  Violation of the mail or wife fraud statutes requires that Plaintiffs prove (1) a scheme to defraud; (2) use of the

---

[5]While some caselaw suggests *Seville* is inapplicable where an association-in-fact enterprise is alleged, no Third Circuit decision suggests that *Seville* is otherwise inapplicable here, where the enterprise is not alleged to be an association-in-fact. *Cf. In re Am. Investors Life Ins. Co. Annuity Mktg. and Sales Practices Litig.*, MDL 1712, 2006 WL 1531152, at *9 (E.D. Pa. June 2, 2006) (finding *Seville* inapplicable where the relevant enterprise is an association-in-fact); *McCullough v. Zimmer, Inc.*, No. 08-1123, 2009 WL 775402, at *12 (W.D. Pa. Mar. 18, 2009) (dismissing complaint where plaintiff failed to properly plead associated-in-fact enterprise of "disparate group of Defendants, doctors, hospitals, and other entities that compete with each other").

[6]Defendants Tulskie and FII argue on reply that if "FII is the enterprise and no association-in-fact enterprise existed," then:
> it naturally follows that Tulskie and Quigley are not members of the enterprise and that they had no involvement with operating the enterprise.  Accordingly, since Plaintiffs are attempting to name Food Ingredients as both the RICO 'person' and 'enterprise,' they fail to satisfy the distinctiveness requirement.

Defs. Mem. at 5.  This interpretation belies Plaintiffs' pleadings, which make clear that Tulskie and Quigley are alleged as the "persons" acting through FII, the corporate "enterprise;" Plaintiffs bring their RICO claim against Tulskie and Quigley, not FII.  Am. Compl. ¶¶ 9, 43.  To the extent Tulskie and FII argue that the distinctiveness requirement cannot be met where the "person" defendants were employed as officers of the corporate "enterprise" defendant, the Court rejects that position.  *See Jaguar*, 46 F.3d at 268 (corporation is an entity "legally distinct from its officers and employees" and thus a plaintiff may successfully allege that such persons committed a § 1962(c) violation while naming the corporation itself as the RICO enterprise).

mails or wires to further that scheme; and (3) fraudulent intent.  *United States v. Pharis*, 298 F.3d

228, 233 (3d Cir. 2002) (citing *United States v. Sturm*, 671 F.2d 749, 751 (3d Cir. 1982));

*Advanced Power Sys., Inc. v. Hi-Tech Sys., Inc.*, No. 90-7952, 1992 WL 97826, at *5 (E.D. Pa.

Apr. 30, 1992) (citations omitted).

Furthermore, claims of mail or wire fraud in support of a RICO violation must satisfy the

heightened pleading requirements of Federal Rule of Civil Procedure 9(b).  *Warden v.

McLelland*, 288 F.3d 105, 114 (3d Cir. 2002).[7]  Failure to plead mail or wire fraud with the

requisite specificity prevents them from being considered as predicate acts.  *See Zellner v.

Monroe County Mun. Waste Mgmt. Auth.*, No. 07-1976, 2008 WL 2962595, at*8 (M.D. Pa. Jul.

28, 2008) ("As these wire frauds were not properly plead, the Court will not consider them as

'predicate acts.'"); *Dist. 1199P Health and Welfare Plan v. Janssen, L.P.*, No. 06-3044, 07-2224,

07-2608, 07-2860, 2008 WL 5413105, at *11 (D.N.J. Dec. 23, 2008) ("[T]his Court will only

consider as predicate racketeering acts those mail and wire frauds alleged with the specificity

required by the heightened pleading standard of Rule 9(b).").

With regard to the underlying mail and/or wire fraud, Plaintiffs allege the following facts:

> Defendants Tulskie and Quigley committed mail and/or wire fraud in connection with
> their scheme fraudulent investments, loans and other financial resources from Franks and
> affected interstate commerce in doing so.  Defendants interacted with each other and
> Franks via cell phone, e-mail correspondence, facsimile and other use of the mails and
> telephone system.  Defendants Tulskie and Quigley interacted via cell phone, e-mail
> correspondence, facsimile and other use of the mails and telephone system with their
> accountants, lawyers and other individuals in Pennsylvania in Delaware, who
> unknowingly assisted in their efforts to hide the embezzlement, fraudulent
> misrepresentations and other fraudulent activity.

---

[7]While malice, intent, knowledge and other conditions of the mind can be pled generally,
"in all averments of fraud or mistake, the circumstances constituting the fraud or mistake shall be
stated with particularity."  Fed. R. Civ. P. 9(b).

Am. Compl. ¶ 45.   Tulskie and FII argue that Plaintiffs do not meet the heightened pleading

standard of Rule 9(b) here because they fail to allege with any detail (1) the content of any

communication; (2) the dates of any communication; (3) the person or persons who made the

communication; (4) the relationship between the communication and a scheme to defraud; or (5)

the scheme to defraud itself and how the mailings and wires were used in furtherance of that

scheme.  *See* Defs. Mem. at 17.

While allegations of date, time and place may satisfy Rule 9(b)'s particularity

requirement, "nothing in the rule requires them;" Plaintiffs were "free to use alternative means of

injecting precision and some measure of substantiation into their allegations of fraud."   *Seville*,

742 F.2d at 791 (plaintiff satisfied Rule 9(b)'s requirements not by providing date, time and place

allegations but by "incorporating into the complaint a list identifying with great specificity the

pieces of machinery that were the subject of the alleged fraud," identifying "which pieces of

equipment were the subject of which alleged fraudulent transaction," and setting forth "the nature

of the alleged misrepresentations").   However, Plaintiffs merely defend their pleadings on the

grounds that mailings and wire communications "do not even have to be an essential part of the

fraudulent scheme," but need only be "incident to an essential part of the scheme."  Pls. Opp. at

12 (citing *Am. Investors*, 2006 WL 1531152 at *12).   While perhaps true, this observation is

beside the point.  Plaintiffs' allegations provide no details as to how, when or in what manner the

mails and interstate wires were part of Tulskie and Quigley's scheme to defraud Franks.  S*ee*

*Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658 (3d Cir. 1998), *abrogation on*

*other grounds recognized*, *Forbes v. Eagleson*, 228 F.3d 471 (3d Cir. 2000) (complaint alleging

mail fraud was deficient where it failed to describe when, by whom and to whom mailing was sent and precise content of each particular mailing was not detailed). By simply repeating that the parties "interacted with each other...via cell phone, e-mail correspondence, facsimile and other use of the mails and telephone system," with no further detail as to those interactions, Plaintiffs have failed to inject any precision or substantiation here and thus failed to provide proper notice to Tulskie and Quigley as to the particular misconduct of which they stand accused.

Plaintiff mentions in passing that "where a party alleges a complex corporate fraud, much of the factual information necessary to describe the details of the fraud may be 'peculiarly within the defendant's knowledge and control.'" Pls. Opp. at 16 (citing *Kaiser Found. Health Plan, Inc. v. Medquist, Inc.*, No. 8-4376, 2009 WL 961426, at *6 (D. N.J. Apr. 8, 2009) (complaint met pleadings standards under Rule 9(b) in corporate fraud case where it provided details as to how defendant generated inflated invoices, how such invoices were "upcharged," and how plaintiffs were invoiced by defendant)). In cases of corporate fraud, plaintiffs cannot be expected to have personal knowledge of the details of corporate internal affairs. *See In re Craftmatic Sec. Litig.*, 890 F.2d 628, 645 (3d Cir. 1989). However, even where the heightened pleading standard for Rule 9(b) is relaxed in such cases, the plaintiff must still allege that the necessary information lies within the defendant's control and the complaint must still include a statement of facts upon which the allegations are based. *Id.* Nowhere have Plaintiffs pleaded any such allegations. *Cf. Kaiser*, 2009 WL 961426 at *7 (relaxed pleading standard appropriate where plaintiff alleged that the "specific internal corporate mechanisms and operations by which [defendant] carried out the fraud ... and the specific activities engaged in by specific personnel in furtherance of the fraud, are within the exclusive knowledge and understanding of those within [defendant]").

3.       *Pattern of Racketeering Activity*

A necessary element of any RICO claim is the existence of a "pattern of racketeering activity" used in the illegal interference with interstate commerce. 18 U.S.C. § 1962. This pattern requires the commission of at least two predicate acts within a 10-year period. 18 U.S.C. § 1961(5). These predicate acts must be related and must pose a threat of continuity; they are considered related if they have the "same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics, and are not isolated events." *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989).

Without first adequately pleading that Tulskie and Quigley engaged in mail or wire fraud, it is impossible to establish the requisite pattern of racketeering based on underlying fraud. As the Court has concluded that Plaintiffs have failed to provide the circumstances in which the alleged fraud took place with specific details, it likewise cannot find that Plaintiffs' pleadings have established the existence of a pattern. *See Kolar v. Preferred Real Estate Investments, Inc.*, 361 Fed. App'x 354, 365 (3d Cir. Jan. 12, 2010) (where "allegations set forth disputes sounding in contract" and thus failed to state requisite predicate acts for RICO claim, no "pattern of racketeering" premised on those disputes was adequately pled).

**B.       Sufficiency of Plaintiffs' Fraud Claim**

Plaintiffs' separate fraud claim (Count Five) similarly cannot survive Tulskie and FII's Rule 12(b)(6) motion to dismiss; Plaintiffs still fail to meet the Rule 9(b)'s pleading requirements. As explained above, *supra* Section II.B, Rule 9(b) requires that in all averments of fraud or mistake, the circumstances constituting fraud must be stated with "particularity in order to place the defendants on notice of the precise misconduct with which they are charged, and to

safeguard against spurious charges of immoral behavior." *Seville*, 742 F.2d at 791.  Plaintiffs

may satisfy this requirement by pleading the date, place, or time of the fraud, or otherwise

providing specific details and substance to their fraud allegations.  *Id.*  Plaintiffs must also allege

who made the alleged misrepresentation, to whom, and the general content of the

misrepresentation.  *Rolo*, 155 F.3d at 658-659.  Although this standard has been relaxed in the

cases of corporate fraud, the pleader must still allege that the necessary information lies within

the defendant's control and include a statement of facts upon which the allegations are based.

*Craftmatic*, 890 F.2d at 645.

In the present case, Plaintiffs have based their fraud claim on the same grounds as

described in their RICO claim.  Plaintiffs allege that Defendants induced Franks to

"provid[e]investments into Food Ingredients and All the Whey in return for monies and other

property rights, including increased shares in All the Whey."  Am. Compl. at ¶ 74.  They also

allege that Defendants "made material misrepresentations to Franks that shares would be reissued

to reflect Franks' significant ownership interest in All the Whey."  Am. Compl. ¶ 75.  However,

Plaintiffs have failed to describe a single incident of fraud with any amount of detail or

particularity.  The Amended Complaint does not identify which Defendant made which alleged

fraudulent representation, when, or in what manner.  As before, Plaintiffs have not bothered to

explain how this scheme represented a complex case of corporate fraud nor have they alleged

that the pertinent details of the fraud lie with Defendants.  For these reasons, Plaintiffs have not

adequately pled fraud pursuant to Rule 9(b).

In addition, for the reasons discussed below, in light of the its dismissal of Plaintiffs'

RICO claim, the Court lacks subject matter jurisdiction over Plaintiffs' state law claims,

12

including their fraud count, and as such must dismiss them as well. *See infra* Section III.C.

### C.     Plaintiffs' Remaining State Law Claims

Pursuant to 28 U.S.C. § 1367(c)(3), a court can decline to exercise supplemental jurisdiction if it has "dismissed all claims over which it has original jurisdiction." The Third Circuit has made clear that where "it appears that the federal claim is subject to dismissal," then "the court should ordinarily refrain from exercising [supplemental] jurisdiction in the absence of extraordinary circumstances. *Tully v. Mott Supermarkets, Inc.*, 540 F.2d 187, 196 (3d Cir. 1976); *see United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (when federal causes of action are dismissed, federal courts should not separately entertain pendent state claims). No such circumstances arise here.[8] Accordingly, the Court will decline to exercise supplemental jurisdiction over Plaintiffs' state law claims (Counts Two through Five) and will dismiss them for lack of subject matter jurisdiction.

### D.     Leave to Amend Plaintiffs' Complaint

Should the Court find Plaintiffs' Amended Complaint inadequate, they request leave to amend again. *See* Pls. Opp. at 15. Pursuant to Federal Rule of Civil Procedure 15(a), a party may, after the first amended pleading, amend its complaint "only by leave of court or by written

---

[8]These extraordinary circumstances include:
> When the defendant fails to call the court's attention to the weakness of the federal claim before the court has invested a substantial amount of time in the case, when the pendent claim significantly invokes question of federal policy ... or when dismissal of the pendent claims would otherwise sharply clash with the directive ... that pendent jurisdiction serve the ends of judicial economy, convenience, and fairness to the litigants.

*Kavit v. A.L. Stamm & Co.*, 491 F.2d 1176, 1180 n.4 (2d Cir. 1974) (internal citations omitted). Here Tulskie and FII moved to dismiss Plaintiffs' RICO claim at the outset, Plaintiffs' state claims do not involve questions of federal policy, and supplemental jurisdiction serves no purpose with regard to judicial economy or convenience.

13

consent of the adverse party and leave shall be freely given when justice so requires."  A court

may deny a motion for leave to amend when certain factors are present, including "undue delay,

bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by

amendments previously allowed, undue prejudice to the opposing party by virtue of allowance

of the amendment, [and] the futility of the amendment."  *Marcavage v. West Chester Univ.*, No.

06-910, 2007 WL 789430, at *3 (E.D. Pa. Mar. 15, 2007) (internal citations omitted).[9]

The Court is cognizant of the need to avoid dismissing a possibly meritorious claim based

on defects in the pleadings, particularly in a fraud case.  *See In re Burlington Coat Factory Sec.*

*Litig.*, 114 F.3d 1410, 1435 (3d Cir. 1997).  However, Plaintiffs themselves signal unmistakably

that leave to amend their Complaint a second time would indeed be futile.  In their opposition

brief, Plaintiffs request "that the Court identify the areas of the complaint where additional

attention is required;" moreover, they ask that "any required amended complaint be permitted to

be filed within ninety days of the date of any such Order so that Plaintiffs have the opportunity to

incorporate the results of discovery into any required re-pleading of the Complaint."  Pls. Opp. at

15.  Despite Plaintiffs' entreaty, it is not for the Court to direct Plaintiffs not only as to where

they have gone wrong but how to make it right, nor are Plaintiffs entitled to additional discovery

so that they may present adequate pleadings.  *See PR Diamonds, Inc. v. Chandler*, 364 F.3d 671,

699 (6th Cir. 2004) (plaintiffs are "not entitled to an advisory opinion from the Court informing

---

[9]In addition, while not reaching its decision on this ground, the Court notes that it is better
practice for a plaintiff to attach a proposed amended complaint when seeking leave to amend,
which Plaintiffs here have failed to do.  *See Centifanti v. Nix*, 865 F.2d 1422 (3d Cir. 1989)
("courts should not be expected to wade through the pleadings to sort the wheat from the chaff,
and essentially, do the work of the parties' counsel;" the court may determine whether to grant
leave "more effectively and quickly if it has before it a copy of the proposed amendment");
*Sitkoff v. BMW of N. Am. v. The Estate of Schreiber*, 846 F. Supp. 380, 385 (E.D. Pa. 1994).

them of the deficiencies of the complaint and then an opportunity to cure those deficiencies"). Plaintiffs' requests, and their failure to attach a proposed Second Amended Complaint or even delineate in their briefing what changes they seek to incorporate into their pleadings, make clear to the Court that Plaintiffs are in fact unprepared to file an second amended complaint which could remedy the pleading failures discussed earlier in the Court's opinion.  If Plaintiffs require the Court's direction as to how to amend and 90 days' discovery to do so, leave to amend the Complaint again at this juncture would be inherently futile.  *See Nestor Colon Medina & Sucesores, Inc. v. Custodio*, 964 F.2d 32, 39(1st Cir. 1992) (noting that "it is only after stating a valid claim that a plaintiff can insist upon a right to discovery"); *McCloskey v. Mueller*, 446 F.3d 262, 271 (1st Cir. 2006) ("plaintiffs should not be permitted to conduct fishing expeditions in hopes of discovering claims that they do not know they have"); *see also Lellock v. Pain, Webber, Jackson & Curtis, Inc.*, No. 81-2104, 1983 WL 1351, at *7 (W.D. Pa. June 29, 1983) ("Plaintiff's motion and brief essentially state that he believes he has a claim[...], and, if given time, he will figure out what that claim is.  This is not a permissible approach to obtaining leave to amend....[T]he moving party in a Rule 15(a) situation must apprise the Court and the opposing part of the precise nature of the proposed amendment, and because plaintiff has failed to do this, his motion [for leave to amend] must fail.").

In *Burlington*, cited by Plaintiffs in support of their request for leave to amend, the Third Circuit reversed the district court's denial of leave to amend the complaint where the appellate court determined that the amended complaint was dismissed as futile on Rule 9(b)'s "failure to plead with particularity" grounds alone.  *See Burlington*, 114 F.3d at 1435.  Notably, the appellate court based its decision on the fact that the district court did not clearly articulate its

15

grounds for denying leave to amend.  *See id.* (if district court had made clear on the record that

denied leave to amend was based on undue delay or prejudice to defendants as well as futility,

the appellate court would have affirmed denial).  In addition to its finding of futility as outlined

above, here the Court wishes to emphasize that Plaintiffs were also already put on notice as to the

deficiencies in their RICO and fraud claims by Tulskie's original Motion to Dismiss (Tulskie 1st

Motion to Dismiss at 10-18), yet failed to correct the errors with their Amended Complaint such

as to state a cognizable cause of action.  To countenance this disregard by granting leave to

amend would unduly prejudice Tulskie and FII by requiring them to respond yet a third time to a

new complaint.  *See Ca. Public Employees' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126,163 (3d Cir.

2004) (noting *Burlington*'s mandate but affirming district court's denial of leave to amend

inadequately pleaded fraud allegations a third time where plaintiffs "had already been given

ample opportunity to state a cognizable cause of action and continuing to require defendants to

defend the action, and to ultimately incur the effort and expense of a third motion to dismiss after

two successful dismissal motions, would clearly constitute undue prejudice to the defendants")

(citations omitted)); *cf. Tierney and Partners, Inc. v. Rockman*, 274 F. Supp. 2d 693, 699 (3d Cir.

2003) (granting leave to amend where plaintiff had failed to satisfy RICO pleading requirements

but had not previously filed an amended complaint).  Indeed, Plaintiffs made essentially no

changes at all to their underlying fraud allegations following the original Motions to Dismiss.[10]

---

[10]Plaintiff's original Complaint alleged that "Defendants interacted with each other via cell phone, e-mail correspondence and other use of the mails and telephone system."  Compl. ¶ 38.  After Tulskie moved to dismiss the original Complaint in part on the grounds that Plaintiffs failed to adequately plead the requisite fraud acts for their RICO claim (Tulskie 1st Motion to Dismiss at 14), Plaintiffs amended their Complaint in relevant part only to read that:

> Defendants interacted with each other and Franks via cell phone, e-mail correspondence, facsimile and other use of the mails and telephone system.  Defendants Tulskie and

This Court "has discretion to deny a plaintiff leave to amend where the plaintiff was put on notice as to the deficiencies in his complaint, but chose not to resolve them."  *Krantz v. Prudential Invs.,* 305 F.3d 140, 144 (3d Cir. 2002) (denying leave to amend previously amended complaint where motion to dismiss original complaint put plaintiff on notice of deficiencies, yet plaintiff failed to rectify them in his first amended complaint); *see Benzon v. Morgan Stanley Distributors, Inc.*, 420 F.3d 598, 613-14 (6th Cir. 2005) (denying leave to amend after first dismissal was not an abuse of discretion where the plaintiff previously filed an amended complaint and was on notice of defects from a previous motion to dismiss that was filed but not decided); *United States ex rel. Adrian v. Regents of Univ. of Ca.,* 363 F.3d 398, 404 (5th Cir. 2004) (same); *see also Hall v. United Techs. Corp.*, 872 F. Supp. 1094, 1101-03 (D. Conn. 1995) (denying leave to amend after the first ruling on motion to dismiss where the plaintiffs had notice of defects in second amended complaint from two previous but undecided motions to dismiss); *cf. Burlington*, 114 F.3d at 1417 (reversing denial of leave to amend where plaintiffs had not previously amended their complaint before dismissal).  Tulskie and FII's original Motions to Dismiss alerted Plaintiffs that their allegations might be insufficient to state a RICO or underlying fraud claim; Plaintiffs could have made appropriate changes before filing their Amended Complaint.  As such, the Court is compelled to grant Tulskie and FII's joint  Motion and to dismiss Plaintiff's Complaint without leave to amend.  An appropriate Order follows.

---

> Quigley interacted via cell phone, e-mail correspondence, facsimile and other use of the mails and telephone system with their accountants, lawyers and other individuals in Pennsylvania and Delaware, who unknowingly assisted in their efforts to hide the embezzlement, fraudulent misrepresentations and other fraudulent activity..."

Am. Compl ¶ 45.  In other words, Plaintiffs institute no substantive change to their Amended Complaint as to the details of the alleged fraudulent use of the mails and wires.